Matter of Schreiber v New York State Tax Appeals Trib. (2023 NY Slip Op 06784)

Matter of Schreiber v New York State Tax Appeals Trib.

2023 NY Slip Op 06784

Decided on December 28, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 28, 2023

535976
[*1]In the Matter of Herman Schreiber et al., Petitioners,
v
New York State Tax Appeals Tribunal et al., Respondents.

Calendar Date:November 14, 2023

Before:Egan Jr., J.P., Pritzker, Fisher, McShan and Powers, JJ.

Barclay Damon LLP, Syracuse (David G. Burch Jr. of counsel), for petitioners.
Letitia James, Attorney General, Albany (Owen Demuth of counsel), for respondents.

Pritzker, J.
Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal denying petitioners' request for a refund of personal income tax imposed under Tax Law article 22.
This proceeding concerns petitioners' entitlement to qualified empire zone enterprise (hereinafter QEZE) tax reduction credits that they claimed for tax year 2014 as pass-throughs from B & H Foto & Electronic Corporation, a New York corporation.[FN1] B & H is an S corporation that sells professional photography and videography equipment as well as other electronics. B & H is in Manhattan and has been certified as a QEZE, pursuant to General Municipal Law article 18-B, in the North Brooklyn/Brooklyn Navy Yard/East Williamsburg Empire Zone since March 2002. In addition to the goods B & H sells in New York, it derives significant income from other states and countries by way of mail and online orders shipped outside of the state. Due to B & H's status as an S corporation, pursuant to Tax Law § 660, all income derived from B & H, as well as any QEZE tax reduction credits (hereinafter QEZE credits), flowed through to petitioners and were reflected on their state income tax return.
During the relevant tax year, petitioners claimed QEZE credits on their personal income tax return. Pursuant to Tax Law § 16 (b)-(f), the amount of a QEZE credit is derived from four factors: (1) the benefit period factor; (2) the employment increase factor; (3) the zone allocation factor; and (4) the tax factor. Only the tax factor, which is a dollar amount based upon the tax imposed by New York law on the taxpayer that is attributable to the corporation's income, is at issue here. The tax factor for a shareholder of a New York S corporation that is claiming a QEZE credit is the portion of a shareholder's total New York income tax that is equal to "the ratio of the shareholder's income from the S corporation allocated within the state, entering into New York adjusted gross income, to the shareholder's New York adjusted gross income" (Tax Law § 16 [f] [2] [C]) [emphasis added]).
For the relevant tax year, petitioners calculated their QEZE credits — approximately $293,000 — based on all of B & H's taxable income, including income from sales that were shipped out of state. Thereafter, the Division of Taxation (hereinafter the Division) audited petitioners and sent them an account adjustment notice, determining that their QEZE credit was improperly calculated by failing to exclude income attributable to B & H's out-of-state sales when calculating the tax factor because this income was not "allocated within the state" as required by Tax Law § 16 (f) (2) (C). To determine the portion of B & H's income that was allocated within the state, the Division took the tax factor number reached by petitioners and multiplied it by B & H's business allocation percentage (hereinafter BAP) (see Tax Law former § 210 [3]). B & H had reported a BAP of 17.74%, which gave an [*2]updated QEZE credit in the amount of approximately $52,000, reducing the refund that was owed to petitioners.
In March 2019, petitioners applied to the Division of Tax Appeals seeking a refund of personal income tax in the amount of the downward adjustment to their QEZE credit. The Division moved for a summary determination, which was granted by an Administrative Law Judge (hereinafter the ALJ) who found that the Division properly factored in the BAP when determining the tax factor relevant to petitioners' QEZE credit. In reaching this conclusion, the ALJ determined that this Court's decision in Matter of Purcell v New York State Tax Appeals Trib. (167 AD3d 1101 [3d Dept 2018], appeal dismissed 33 NY3d 999 [2019], lv denied 33 NY3d 913 [2019]) was controlling, and that the Division's downward adjustment was consistent with the holding of Purcell. Petitioners filed an exception to the ALJ's determination, arguing that the Division and, by extension, the ALJ misapplied the holding in Purcell in adopting the view that BAP is required to be considered in all situations. In this respect, petitioners contended that statutes pertaining to QEZE credits do not mention the BAP being a part of the tax factor calculations and that the Division is not applying the relevant statutes properly. Following oral argument, respondent Tax Appeals Tribunal affirmed the ALJ's determination, finding that the ALJ properly applied Purcell. The Tribunal therefore determined that the ALJ properly granted the Division's motion for summary determination because there existed no issue of material fact. Petitioners commenced this CPLR article 78 proceeding challenging the Tribunal's determination.
The issue in this proceeding distills to whether it was rational for the Tribunal to rely on Purcell in interpreting Tax Law § 16 (f) (2) (C) to require the application of the BAP to determine what portion of B & H's income was "allocated within the state" for purposes of calculating petitioners' QEZE credit. In a proceeding such as this, "it is well settled that this Court's review of the Tribunal's determination is limited to whether it has a rational basis and is supported by substantial evidence" (Matter of Carlson v Tax Appeals Trib. of the State of N.Y., 214 AD3d 1133, 1134 [3d Dept 2023] [internal quotation marks, brackets and citations omitted]; see Matter of Obus v New York State Tax Appeals Trib., 206 AD3d 1511, 1512 [3d Dept 2022], lv denied 39 NY3d 907 [2023]; Matter of White v State of N.Y. Tax Appeals Trib., 196 AD3d 927, 929 [2021]). Where the question presented is one "of pure statutory interpretation, . . . we consider the statutory language and legislative history without deference to the Tribunal's interpretation" (Matter of Purcell v New York State Tax Appeals Trib., 167 AD3d at 1103; see Matter of Obus v New York State Tax Appeals Trib., 206 AD3d at 1512). "[S]tatutes creating exemptions must be strictly construed against the taxpayer and, if ambiguity arises, against [*3]the exemption, although such statutes should not be interpreted so narrowly as to defeat their settled purposes" (Matter of Suozzi v Tax Appeals Trib. of the State of N.Y., 179 AD3d 1253, 1255 [3d Dept 2020] [internal quotation marks and citations omitted]; see Matter of Purcell v New York State Tax Appeals Trib., 167 AD3d at 1103). "A taxpayer seeking a tax credit bears the burden of proving an unambiguous entitlement thereto, showing that the proffered interpretation of the statute is not only plausible, but also that it is the only reasonable construction" (Matter of Suozzi v Tax Appeals Trib. of the State of N.Y., 179 AD3d at 1255 [internal quotation marks and citations omitted]; accord Matter of Forest City Realty Trust, Inc. v Tax Appeals Trib. of the State of N.Y., 188 AD3d 1317, 1318 [3d Dept 2020]).
In Purcell, this Court sought to answer the question of "whether the phrase 'allocated within the state' requires that the income taxes attributable to a New York S corporation's out-of-state income be excluded when calculating a resident shareholder's QEZE tax reduction credit" (167 AD3d at 1102-1103). In that case, one of the petitioners [FN2] was the sole shareholder of a New York S corporation, Purcell Construction Corporation (hereinafter PCC), which constructed commercial buildings, mainly in New York and Virginia, using systems manufactured within a QEZE (id. at 1101). "During the [tax] years at issue, PCC derived a significant portion of its gross revenues from construction projects in Virginia" (id.). When calculating the QEZE credits for the tax years at issue, the petitioners utilized all of PCC's taxable income, "including income derived from PCC's operations in Virginia" (id. at 1102). The Division, when reviewing the petitioners' income tax returns for the years at issue, determined that the petitioners had miscalculated the QEZE credits because they failed "to exclude the state income taxes that were attributable to PCC's out-of-state income when calculating the tax factor, because such income was not 'allocated within the state' as required by Tax Law § 16 (f) (2) (C)" (id.). "To determine the portion of PCC's income that was allocated within the state, the Division of Taxation utilized PCC's [BAP] . . . for each of the relevant tax years" (id. [citation omitted]). Ultimately, the Tribunal held that the Division's use of the BAP to calculate the tax factor was proper (id.). The petitioners commenced a CPLR article 78 proceeding and this Court confirmed, finding that "it is rational to interpret Tax Law § 16 (f) to require similar allocation of a New York S corporation's income for resident shareholders based on the BAP reported by the corporation" (id. at 1105).
In this case, however, use of the BAP leads to an irrational result given that B & H, during the tax year at issue, did not have any out-of-state operations. As set forth in petitioners' petition for a refund to the Division of Tax Appeals, "[a]ll of the income from [B & H] was [*4]earned from activity in New York State, and more specifically from activity within Empire Zones." Petitioners also asserted, in their affirmation in opposition to the summary determination, that "all of its employees and assets are situated within the State of New York." Significantly, the Tribunal does not assert otherwise but, rather, relies only on Purcell in support of its decision to use the BAP, thereby drastically reducing petitioners' QEZE credit. While it was rational to reduce the QEZE credit in Purcell given the extensive out-of-state activity that took place, that simply was not the case here. Even more significantly, reducing petitioners' QEZE credit based on the BAP runs afoul of the purpose of the QEZE credit. The purpose of the Empire Zones Program is to provide "special incentives and assistance that will promote the development of new businesses, the expansion of existing businesses and the development of human resources" in "certain areas characterized by persistent and pervasive poverty, high unemployment, limited job creation, a dependence on public assistance income, dilapidated and abandoned industrial and commercial facilities and shrinking tax bases" (General Municipal Law § 956). Certainly, the Empire Zones Program is most successful if businesses within QEZEs are successful and generate robust business, bringing not only money into the area, but jobs as well. To then limit those entities from realizing the full benefit of that robust business by restricting the QEZE credit to only sales with an end destination in New York is illogical and contrary to the statutory purpose.
Moreover, a brief examination into how the BAP was calculated here is further evidence of irrationality. According to the Form CT-3-S-ATT, Schedule A and the accompanying instructions for tax year 2014, the BAP was computed by dividing the total sales of New York State tangible personal property by all sales of tangible personal property. This is significant because Tax Law § 16 (f) (2) (C) limits the tax factor portion of the QEZE credit to the "shareholder's income from the S corporation allocated within the state" rather than, as the Tribunal appears to apply, sales with a destination point within New York State. Additionally, in schedule E of Form IT-604,[FN3] which is the form for claiming the QEZE credit, there is no mention of the BAP, nor is there any reference to the BAP in the accompanying form instructions.
Given the foregoing, under these facts, we find that the Tribunal's interpretation of Tax Law § 16 (f) (2) (C) and Purcell (167 AD3d 1101)as requiring the usage of the BAP when calculating the tax factor for the QEZE credit is irrational. As such, petitioners have proven "an unambiguous entitlement thereto, showing that the proffered interpretation of the statute is not only plausible, but also that it is the only reasonable construction" (Matter of Suozzi v Tax Appeals Trib. of the State of N.Y., 179 AD3d at 1255 [internal quotation marks [*5]and citations omitted]).
Egan Jr., J.P., Fisher, McShan and Powers, JJ., concur.
ADJUDGED that the determination is annulled, without costs, and petition granted.

Footnotes

Footnote 1: During the 2014 tax year, petitioners were 50% owners of the stock, directly and through trusts, in B & H. Sam and Miriam Goldstein owned the remaining 50% of B & H and have also commenced a CPLR article 78 proceeding raising identical issues (see Matter of Goldstein v New York State Tax Appeals Tribunal, ___ AD3d ___ [3d Dept 2023] [decided herewith]).

Footnote 2: In that case there were two petitioners, the sole shareholder of the S corporation and his wife. The petitioners jointly filed their taxes during the years at issue.

Footnote 3: Line 21 states, "Enter the amount of your income from the QEZE allocated within N[ew] Y[ork] S[tate] (see instructions)." The instructions state that, for an S corporation, "[t]his is the income from the New York S corporation that is a QEZE, allocable to New York State" (emphasis added).